Filing # 36345903 E-Filed 01/08/2016 03:54:04 PM

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL DISTRICT
## IN AND FOR SEMINOLE COUNTY OF FLORIDA

| | |
|---|---|
| JEUNESSE GLOBAL, LLC, a Florida limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>DARREN JENSEN, an individual,<br><br>Defendant. | COMPLAINT<br><br><br>Case No.<br><br>Judge: |

Plaintiff Jeunesse Global Holdings, LLC ("Jeunesse"), by and through its undersigned counsel, hereby for cause of action, alleges and complains against Defendant Darren Jensen ("Jensen") as follows:

### PARTIES

1. Jeunesse is a Florida limited liability company, in good standing, with a principal place of business located at 650 Douglas Avenue, Suite 1020, Altamonte Springs, Florida 32714.

2. Jensen is an individual who, upon information and belief, is an individual residing in the State of Utah.

### JURISDICTION

3. Jurisdiction over Jensen is proper in this Court pursuant to Florida's long-arm statute, Florida Statue Sec. 48.193 et seq. and conforms with the United States Constitution.

4.  Jensen is also party to a written agreement with Jeunesse, *infra*, in which he agrees that the agreement shall be construed under the laws of the State of Florida with jurisdiction for any dispute being Seminole County District Court.

## GENERAL ALLEGATIONS

5.  Jeunesse is a direct selling company engaged in the business of manufacturing, distributing, and selling anti-aging creams and health supplements in the United States and internationally.

6.  One of Jeunesse's flagship products is its Instantly Ageless™ microcream for which Jeunesse has become widely known.

7.  Since its founding, Jeunesse has found tremendous success in the marketplace and substantial goodwill in its business and in its Instantly Ageless™ microcream and other products and services.

8.  Jeunesse's products are marketed and sold through a network of independent distributors who are remunerated pursuant to a compensation plan, which provides for a structured series of rankings, commissions, and bonuses based upon sales volume and the number of other distributors placed in a "downline."

9.  Jeunesse distributors are critical to its success and its ability to sell and distribute Instantly Ageless™ and its other products.

10. Jeunesse distributors not only sell its products directly to consumers, but also recruit other distributors to their downline.

11. Jeunesse has continually strived to develop, maintain, and protect an established customer base for its products, and has continually sought to add to that customer base.

2

12. Jeunesse spends enormous resources to train, develop, and support its independent distributors.

13. Jeunesse spends these resources for the mutual benefit of the business of its independent distributors and Jeunesse.

14. Jeunesse relies on the protection of its trade secrets, including ownership of several product formulas, including that of Instantly Ageless™, to ensure the quality of the products and services being delivered to Jeunesse's customers, to maintain valuable good will that exists between Jeunesse and its customers, and to protect and increase Jeunesse's customer base.

15. In order to support its network of independent distributors which are situated throughout the world, Jeunesse employs individuals to assist in the day-to-day operations of the company and to perform certain obligations associated with the employee's title and position.

16. On or about August 25, 2012, Jensen was hired as Chief Sales Officer of Jeunesse pursuant to an employment agreement (the "Employment Agreement") executed by Jensen and Jeunesse. Due to confidentiality provisions within the Employment Agreement and the proprietary nature of same, Jeunesse sets forth specific provisions within the Employment Agreement only - a true and correct copy of the entire Employment Agreement will be submitted under seal.

17. Among other provisions, the Employment Agreement signed by Jensen included restrictive covenants to protect Jeunesse's relationships with customers and distributors, as well as its confidential information.

18. Specifically, as part of his Employment Agreement Jensen agreed that for a period of three years after termination of his employment with Jeunesse, that he would not, directly or indirectly, on his own behalf, or on behalf of any person, firm or company:

> "solicit or canvass the custom of any person firm or company who at any time during the 12 months prior to the termination of this Agreement was a distributor, customer or potential customer of [Jeunesse] and from whom [Jensen] had obtained business or to whom [Jensen] had provided services on behalf of [Jeunesse] or (in the case of a potential customer) with whom [Jensen] had dealt with the view to obtaining business for [Jeunesse]."

*Employment Agreement*, ¶ 21(b)(i)

> "employ, or offer to employ, or entice away any employee or employee of [Jeunesse] who was employed or engaged by [Jeunesse] at the time of termination of this agreement."

*Employment Agreement*, ¶ 21(b)(ii)

> "endeavor to impair in any way the relationship between [Jeunesse] and any person firm or company who was at the termination of this Agreement a supplier or distributor or customer of [Jeuensse]."

*Employment Agreement*, ¶ 21(b)(iii).

19. As Chief Sales Officer, Jensen was directly involved in the development, formulation, manufacturing, sale, and marketing of Jeunesse products including Instantly Ageless™.

20. As a result of his job title and position, Jensen was granted full access to various types of confidential information of Jeunesse including research and development information, compensation information, vendor, supplier, and manufacturer information, cost of goods information, product formulas, financial information, distributor information, and other trade secrets.

4

21. Jensen was compensated by Jeunesse for his efforts to develop relationships with suppliers, manufacturers, distributors, and customers, drive market initiatives, promote sales, develop business and marketing strategies, recruit new leadership, and oversee European and US markets all of which constitute business goodwill owned by Jeunesse.

22. Jensen worked as Chief Sales Officer until May 15, 2015, when he voluntarily terminated his employment.

23. Upon terminating his employment, Jensen entered into an Agreement for Separation (the "Separation Agreement") with Jeunesse on or about May 4, 2015. Due to confidentiality provisions within the Separation Agreement and the proprietary nature of same, Jeunesse sets forth specific provisions within the Separation Agreement only - a true and correct copy of the entire Separation Agreement will be submitted under seal.

24. Pursuant to the Separation Agreement, Jensen acknowledged that in the course of performing his employment with Jeunesse that he "was exposed information about Jeunesse's business, and its vendors, supplies, distributor, and customers, which information amounts to a trade secret and is confidential or commercially sensitive and which may not be readily available to others engaged in a similar business to that of Jeunesse or to the general public." *Separation Agreement*, ¶ 4.

25. Jensen also agreed that he "shall keep secret and shall not at any time, for whatever reason, copy, use, communicate, or reveal to any person or permit the same for Jensen's or another's benefit, any secret or confidential information concerning the business, finances, or organization of Jeunesse . . . or of [Jeunesse's] suppliers, vendors, distributor, or

5

customers, which shall have come to his knowledge during the course of his [Employment Agreement] with Jeunesse." *Id.*

26. Jensen further acknowledged that he "is bound by a Restrictive Covenants provision, paragraph 21, of his [Employment Agreement] with Jeunesse." *Id.* at ¶ 5.

27. Importantly, in the Separation Agreement, Jensen agreed that for a period of three years after termination of his employment with Jeunesse, that he would not, directly or indirectly, on Jensen's own behalf, or on behalf of any person, firm or company:

> "Solicit or canvass any person, firm, or company who at any time during the 12 months prior to May 15, 2015, was a distributor, customer, or potential customer of Jeunesse and from whom Jeunesse had obtained business or to whom Jensen had provided services of behalf of Jeunesse or (in the case of a potential customer) with whom Jensen had dealt with a view to obtaining business for Jeunesse."

*Separation Agreement*, ¶ 5(b)(i)

> "Employ, offer to employ, or entice away any employee of Jeunesse who was employed or engaged by Jeunesse as of May 15, 2015"

*Separation Agreement*, ¶ 5(b)(ii).

> "Endeavor to impair in any way the relationship between Jeunesse and any person, firm, or company who was, as of May 15, 2015, a supplier, vendor, distributor, or customer of Jeunesse."

*Separation Agreement*, ¶ 5(b)(iii).

28. Jensen further agreed that "[d]uring such 3-year time period that the above restrictive covenants are enforceable, Jensen agrees to inform any future company or person in which he shall become an employee or consultant of the terms and conditions of the restrictive covenants contained in [the Separation Agreement]." *Id.* at ¶ 5.

6

29. After quitting as Chief Sales Officer, Jensen straightaway became an employee of a competing network marketing company called LifeVantage Corporation ("LifeVantage") as its President of the Americas and Chief Sales Officer.

30. More recently, Jensen was named President and Chief Executive Officer of LifeVantage.

31. LifeVantage is a competitor of Jeunesse because both companies operate as direct selling businesses and thus compete for distributors and customers in many of the same geographical locations. In addition, the companies both sell products that are in the same product market.

32. Upon information and belief, as CEO, Jensen has substantial responsibilities at LifeVantage including company growth, development of new products, and generation of sales for LifeVantage.

33. Notwithstanding Jeunesse's performance under the Employment Agreement and Separation Agreement, Jensen has failed to abide by the above-referenced provisions, including the confidentiality and non-solicitation provisions thereunder, by using confidential information gained during his employment with Jeunesse in his work with LifeVantage to the detriment of Jeunesse's efforts to grow its business and market share.

34. In particular, and without limitation, Jensen has used Jeunesse's confidential information, including, but not limited to, product formulas, pricing strategies, cost of goods sold, marketing plans, suppliers, vendors, and manufacturers to develop a new product for LifeVantage that is based on a formula that is very similar, if not identical, to the formula used by Jeunesse to create Instantly Ageless™.

35. Using trade secret and other confidential information obtained during this employment with Jeunesse, including but not limited to formulas, pricing, ingredient costs, vendor and supplier information, and other confidential information, Jensen has assisted LifeVantage in developing and producing a new product called TrueScience which is a serum that is very similar, if not identical to, Jeunesse's Instantly Ageless™.

36. With TruScience, Jensen and LifeVantage target the same customer and product market that Jeunesse targets with its Instantly Ageless™ product.

37. In addition, Jensen has contacted and solicited current Jeunesse distributors and employees in an effort have then leave Jeunesse and join LifeVantage

38. Specifically, and upon information and belief, Jensen contacted, solicited and/or recruited several Jeunesse distributors, including but not limited to, Yvonne Yen, Kevin Giguere and Kevin Latmore, through various means including telephone, email and social networking sites such as LinkedIn.

39. Each of these individuals were active distributors of Jeunesse working to build their respective distributorships at the time they were contacted and solicited by Jensen

40. Upon information and belief, Jensen, continues to use confidential information obtained from Jeunesse, to assist other individuals, including other LifeVantage executives, in soliciting, recruiting, and inviting Jeunesse distributors and employees to LifeVantage.

41. Consequently, Jensen has breached at least the above-cited sections of the Employment Agreement and Separation Agreement, which expressly survive the termination of his employment with Jeunesse.

42. Jeunesse remitted notice to Jensen of these foregoing breaches of the Employment Agreement and Separation Agreement and has further demanded that he cease recruiting and soliciting Jeunesse employees and distributors to LifeVantage.

43. Despite this notice and demand, Jensen has not stopped soliciting and recruiting Jeunesse employees and distributors to LifeVantage.

44. Because Jensen continues to engage in the actions described herein, Jeunesse will continue to suffer harm and is entitled to damages and other relief pursuant to the provisions of the Employment Agreement, Separation Agreement, and as provided by applicable law.

## FIRST CAUSE OF ACTION
### Breach of Employment Agreement

45. Jeunesse hereby incorporates by reference the preceding allegations of this Complaint as though fully set forth herein.

46. The Employment Agreement, and other terms and conditions incorporated therein, constitute a valid and enforceable contract between Jeunesse and Jensen under which Jeunesse has performed and otherwise satisfied in full all obligations owing to Jensen.

47. Under the terms of the Employment Agreement, Jensen agreed that agreed not to solicit or recruit any person or entity, who at any time during the 12 months prior to termination of the Employment Agreement, was a distributor, customer or potential customer of Jeunesse.

48. Jensen further agreed that he would not employ, or offer to employ, or entice away any employee of Jeunesse who was employed or engaged by the company at the time he terminated the Employment Agreement.

49. Jensen has breached the Employment Agreement by, directly or indirectly:

  a. Soliciting distributors, customers, and potential customers of Jeunesse to LifeVantage.

  b. Recruiting and enticing individuals who were employed by Jeunesse at the time he terminated the Employment Agreement to work for Jeunesse.

  c. Endeavoring to impair the relationship between Jeunesse and its distributors

50. Jensen's actions violated the ongoing restrictive covenants of the Employment Agreement.

51. As a result of Jensen's material breaches of contract, Jeunesse has sustained both direct and consequential damages and is entitled to recover from Jensen those damages in amounts to be proven at trial.

## SECOND CAUSE OF ACTION
### Breach of Separation Agreement

52. Jeunesse hereby incorporates by reference the preceding allegations of this Complaint as though fully set forth herein.

53. The Separation Agreement, and other terms and conditions incorporated therein, constitute a valid and enforceable contract between Jeunesse and Jensen under which Jeunesse has performed and otherwise satisfied in full all obligations owing to Jensen.

54. Under the terms of the Separation Agreement, Jensen agreed to keep secret and not use for any reason the confidential information of Jeunesse, for his benefit or the benefit of other which came to his knowledge during the course of his employment with Jeunesse.

55. Jensen has breached the Separation Agreement by, directly, or indirectly, in one or more of the following respects:

a. Disclosing Jeunesse's confidential information regarding the Instantly Ageless™ to LifeVantage;

b. Assisting LifeVantage in the development and production of its TrueScience product by using Jeunesse's confidential information;

c. Soliciting distributors, customers, or potential customers of Jeunesse from whom Jensen obtained business or with whom Jensen had provided services on behalf of Jeunesse.

d. Employing or offering to employ, or entice away Jeunesse employees to LifeVantage.

e. Contacting vendors and supplies of Jeunesse for the purchase of licensing products and/or formulas in which Jeunesse has a license.

56. As a result of Jensen's material breaches of contract, Jeunesse has sustained both direct and consequential damages and is entitled to recover from Jensen those damages.

### THIRD CAUSE OF ACTION
### Misappropriation of Trade Secrets

57. Jeunesse hereby incorporates by reference the preceding allegations of this Complaint as though fully set forth herein.

58. Jensen was an employee and Chief Sales Officer of Jeunesse from August 25, 2012, until May 15, 2015.

59. As Chief Sales Officer, and under the terms of the Employment Agreement and Separation Agreement, Jensen learned and had full access to certain confidential information of Jeunesse, including, but not necessarily limited to, trade secrets, product formulas, pricing information and strategies, cost of goods sold, and vendor and manufacturer information.

60. The confidential information obtained by Jensen from Jeunesse qualifies as a trade secret as defined by Florida Statute Sec. 688.002(4).

61. Jensen was granted access to the confidential information at Jeunesse with the understanding that Jensen would maintain its secrecy, and refrain from using the confidential information as required by the Employment Agreement and Separation Agreement.

62. Upon his employment with LifeVantage, Jensen has disclosed and/or used the confidential information, without the express or implied consent of Jeunesse, and despite being under a contractual duty to maintain its secrecy and limits its use.

63. Jensen's unauthorized disclosure and/or use of Jeunesse's confidential information constitutes a misappropriation of Jeunesse's trade secrets pursuant to Florida Statute Sec. 688.002(2).

64. Jensen's misappropriation of Jeunesse's trade secrets has caused and will continue to cause irreparable harm, and Jeunesse is entitled to injunctive relief pursuant to Florida Statute Sec. 688.003.

65. Jensen's misappropriation of Jeunesse's trade secrets has caused Jeunesse to incur monetary damages in an amount to be proven at trial.

66. Jensen's misappropriation of Jeunesse's trade secrets has been willful and malicious, thereby entitling Jeunesse to exemplary damages accounting to twice the amount of damages proven at trial pursuant to Florida Statute Sec. 688.004.

67. Jeunesse is entitled to recover attorneys' fees pursuant to Florida Statute Sec. 688.005.

## FOURTH CAUSE OF ACTION
### Conversion

68. Jeunesse hereby incorporates by reference the preceding allegations of this Complaint as though fully set forth herein.

69. Upon his employment with LifeVantage, Jensen used the proprietary property of Jeunesse, including the Instantly Ageless™ formula, to create, market and distribute the similar, if not identical TrueScience product.

70. Jeunesse has been wrongfully deprived of the use of such proprietary property in that Jensen has used Jeunesse's product formula to create, market and distribute similar products for LifeVantage to the detriment of Jeunesse.

71. Jensen performed the actions complained of herein with an intent to exercise dominion or control over Jeunesse's property inconsistent with Jeunesse's rights under the Employment Agreement and Separation Agreement.

72. Jeunesse is entitled to recover the value of the property that has been converted in an amount to be proven at trial.

73. Jeunesse is entitled to recover the value of the profit Jensen received through his use of Jeunesse's proprietary product formulas.

74. Jeunesse is entitled to an order awarding double the value of the profits LifeVantage received due to the intentional and wrongful nature of Jensen's conversion of Jeunesse's proprietary product formulas.

75. Jeunesse is entitled to an award of exemplary or punitive damages due to Jensen's intentionally wrongful actions which were done in reckless disregard for the rights of Jeunesse.

76. Jeunesse is entitled to attorneys' fees and costs due to Jensen's wrongful conversion.

NOW THEREFORE, Jeunesse respectfully prays for judgment in its favor against Jensen as follows:

1. For an award of direct and consequential and damages, caused by Jensen's material breaches of the Employment Agreement and Separation including but not limited to, disclosing/ confidential information obtained while employed by Jeunesse to LifeVantage; soliciting distributors of Jeunesse to leave an join LifeVantage; enticing employees of Jeunesse to leave and join LifeVantage.;

2. For an award of damages caused by Jensen's misappropriation of Jeunesse's trade secrets including exemplary damages and punitive.

3. For an award of damages caused by Jensen's conversion of Jeunesse's confidential information including double profits received by LifeVantage due to wrongful nature of the conversion as well as exemplary and punitive damages;

4. For an award of attorneys' fees incurred in pursuing this action;

5. For costs and expenses incurred by Jeunesse in pursuing this action.

6. For such other relief as is deemed just and equitable.

DATED this 8th day of January, 2016.

    COLE, SCOTT & KISSANE P.A.
    Counsel for Plaintiff
    Summit Tower, Suite 750
    1900 Summit Tower Blvd.
    Orlando, FL 32810
    Telephone: (321) 972-0025
    Facsimile: (321) 972-0099
    Email: christie.bredahl@csklegal.com

Jeanna.bond@csklegal.com

/s/ *Christina Bredahl*
Christina Bredahl, Esq.
Florida Bar No.: 0055462